**UNITED STATES DISTRICT COURT**

JUDGE NATHAN **FOR THE SOUTHERN DISTRICT OF NEW YORK**

**: Vsevolod Garanin,**

15 CV 03169

**Plaintiff**

Vs.

: Civil Action No. ________________
: Judge ________________

U.S. DISTRICT COURT FILED 2015 APR 22 S.D. OF N.Y.

**: NEW YORK CITY HOUSING PRESERVATION AND DEVELOPMENT**
**: CHANEL ZEISEL, individually, and in her capacity as Development Associate at Gotham Organization**
**: DORON TALEPOROS, individually, and in his capacity as Deputy Director of Marketing at New York City Housing Preservation and Development**

**Defendants**

**COMPLAINT**

Plaintiff, VSEVOLOD GARANIN (hereinafter referred to as "Plaintiff"), Pro Se, hereby complains of the above-captioned Defendants as follows:

**PARTIES**

1. Plaintiff, VSEVOLOD GARANIN (hereinafter "GARANIN"), is a competent individual residing at 224 Richmond Terrace, Apartment 4C, Staten Island, NY 10301.
2. Defendant, CHANEL ZEISEL (hereinafter "Project Manager ZEISEL"), is an adult individual who is employed as the Development Associate of the Gotham Organization. At all relevant times hereto, Project Manager ZEISEL was acting in her capacity as Project Manager of the 530 West 45th Street Leasing Office, a development that is a private-public partnership between Gotham Organization and New York City Housing Preservation and Development. The principal office is located at 530 West 45th Street, 4th Floor, New York, New York 10036.
3. Defendant, DORON TALEPOROS (hereinafter "Deputy Director TALEPOROS"), is an adult individual who is employed as the Deputy Director of Marketing for New York City's Housing Preservation and Development. At all relevant times hereto, Deputy Director TALEPOROS was acting in his capacity as Deputy Director of New York City Housing Preservation Marketing Department with the specific task of overseeing and providing guidelines for the Leasing process

of the 530 West 45th Street Leasing Office, a development that is a private-public partnership between Gotham Organization and New York City Housing Preservation and Development. Deputy Director TALEPOROS' principal office is located at 100 Gold Street, New York, New York 10038.

4. Defendant, NEW YORK CITY HOUSING PRESERVATION AND DEVELOPMENT (hereinafter the "NYC HPD"), is a department of New York City municipality duly incorporated within the State of New York and having offices located at 100 Gold Street, New York, NY 10038.

**JUSRISDICTION AND VENUE**

5. This action arises under the First and Fourteenth Amendments to the United Constitution and is brought pursuant to 42 U.S.C. § 1983.
6. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions.
7. The unlawful actions alleged as detailed in the Complaint were committed in New York, New York, which is located in the Southern District of New York, and therefore, venue is proper in this Court.
8. At all times relevant and material hereto, and with respect to all actions described herein, Defendant Project Manager ZEISEL was a Project Manager of a leasing process for a private-public partnership and de facto acting under the color of law and color of her authority. As such Project Manager ZEISEL is subject to Section 1983 liability because she is performing a government function in leasing a New York City municipal regulated development and acting under the color of law.
9. At all times relevant and material hereto, and with respect to all actions described herein, Defendant Deputy Director TALEPOROS was acting under color of law and color of his authority as official of New York City Housing Preservation and Development.
10. At all times relevant and material hereto, and with respect to all actions described herein, NYC HPD is a New York City municipal department with one task of many being the oversight and procurement of qualified tenants who meet specific income requirements for apartments to be leased at the 530 West 45th Street development.
11. This Action is brought under the individual Defendants in their individual and official capacities.

**FACTUAL BACKGROUD**

12. On April 28, 2014, GARANIN as head of household submitted an application for a 2 bedroom apartment at the 530 West 45th Street Development, a public-private partnership between Gotham Organization and NYC HPD.
13. On July 15, 2014 and after several inquiries regarding the status of the application, GARANIN received notice that the household is eligible for a 2 bedroom apartment at a monthly rent of $3,020.00. Further on July 24, 2014, GARANIN further received notice that apartment 7P is

"officially off the market" and reserved for GARANIN household. Both notices came from a representative of the 530 West 45th Street Leasing Office. **("Exhibit A").**

14. On August 29, 2014, GARANIN receives further notice that "compliance is requesting some clarification". GARANIN provides clarification promptly and expressed his frustration with the lack of progress and professionalism regarding the leasing process. **(Exhibit "B").**
15. On September 24, 2014, nevertheless, GARANIN receives another seemingly exactly same clarification request. After apologies from the Leasing Office representative regarding the delay in the process, GARANIN requests that this application be escalated to the Manager of this process. **(Exhibit "C").**
16. On September 29, 2014, yet another documentation request is requested from GARANIN with Project Manager ZEISEL (whom the application has been escalated to) assuring that the process will be expedited and completed in a timely fashion. **("Exhibit D").**
17. GARANIN once again complies with yet another documentation request.
18. On October 3, 2014, Project Manager ZEISEL confirms receipt and nevertheless asks for another documentation request. **("Exhibit E").**
19. GARANIN complies yet again.
20. On October 16, 2014, Project Manager ZEISEL confirms receipt of yet another documentation request. **("Exhibit F").**

**Illegal and arbitrary actions with regards to GARANIN and household application from Project Manager ZEISEL acting under the color of law and her authority**

21. On November 6, 2014 after GARANIN yet again receives another documentation request, GARANIN finally requests to speak to a Manager who is responsible for overseeing this Leasing process. On November 7, 2014, Project Manager Zeisel refuses to provide an escalation point and threatens to withdraw the application. **(Exhibit G").**
22. Similar application withdrawals threats have been communicated to GARANIN by Project Manager ZEISEL if GARANIN does not comply in entirety with the onerous (at this point almost weekly) documentation requests throughout the application process.
23. Project Manager ZEISEL responded to GARANIN's request for an escalation point by issuing threats and complaining of non-existent documentation flaws (although everything has been verified exactly to how GARANIN provided it).
24. Throughout the process, GARANIN and household have been put under significant stress as related to their housing situation with being in housing jeopardy by not having clarity on the apartment in question.
25. On November 13, 2014, nevertheless, Project Manager ZEISEL requests yet another documentation package **("Exhibit H").**
26. On November 14, 2014, Project Manager ZEISEL confirms receipt of the new documentation request. **("Exhibit I").**
27. Project Manager ZEISEL confirms that GARANIN and household meet the development guidelines as stated on July 15, 2014. Project Manager ZEISEL further apologizes regarding the delay and states the reason for the delay is "unclear direction from the supervising municipal

agency NYC HPD regarding the calculation of self-employed income" – as is the case for GARANIN who is self-employed.

28. On December 1, 2014, GARANIN receives a phone call from Project Manager ZEISEL. Project Manager ZEISEL questions the veracity of GARANIN's interest in a rental property. GARANIN explains that all his documentation has been provided with numerous documentation requests and again asks for an escalation point. Project Manager ZEISEL again refuses to provide one.
29. On December 1, 2014 (same day) GARANIN spoke to a Matthew Berenson who GARANIN understood to be Project Manager ZEISEL's direct supervisor. Matthew Berenson advised that he will speak with Project Manager ZEISEL regarding the delays and length of GARANIN's application.
30. On December 1, 2014 (same day) GARANIN spoke to a representative of NYC HPD who GARANIN understood to be the municipal department responsible in overseeing the Leasing process. NYC HPD advised that the process has to go through the Leasing Office but any and all final approvals / denials and / or complaints shall be vetted with NYC HPD as the municipal department ultimately responsible for the approval and or denial regarding the leasing of apartments at the 530 West 45th Street development.
31. On December 5, 2014 GARANIN followed up with Matthew Berenson and was advised that a rejection letter has been sent. GARANIN questions the grounds of the rejection from Matthew Berenson and via email from Project Manager ZEISEL.
32. On December 8, 2014 GARANIN finally receives an emailed copy of the rejection. **(Exhibit "J").** Despite being dated December 1, 2014, GARANIN only receives the emailed copy on December 8, 2014. GARANIN is further advised that he has 10 days to appeal the decision from the time of the date stamp.
33. Upon information and belief, GARANIN was purposefully, only provided the rejection letter on December 8, 2014 thus giving limited time to appeal.
34. On December 8, 2014, in any event, GARANIN appeals the rejection decision which states "failure to state asset accounts". GARANIN lists every single asset account for GARANIN and household again along with supporting documentation once again that was submitted numerous times **(Exhibit "K").**
35. On December 17, 2014, nevertheless, GARANIN receives another Final Determination Letter with a date stamp of December 11, 2014. The Final Determination letter states several accounts that "were not disclosed". **("Exhibit L").**
36. Notably the Final Determination letter states nothing regarding GARANIN's rental property – which was the purported basis of the conversation between GARANIN and Project Manager ZEISEL on December 1, 2014. Also, and more shockingly, the accounts that "were not disclosed" were the in fact the **first** to be disclosed on April 28, 2014 with the initial application (along with many other times throughout the process).
37. Upon information and belief Project Manager ZEISEL's actions were motivated by an attitude of discrimination and retaliation against Plaintiff.

**<u>Illegal and arbitrary actions with regards to GARANIN and household application from Deputy Director TALEPOROS and NYC HPD acting under the color of law and his authority</u>**

38. The Final Determination Letter noted that any appeals shall be handled by Deputy Director TALEPOROS from NYC HPD.
39. On December 18, 2014 and December 19, 2014, In accordance with the Final Determination letter directions and the in accordance with the conversation between GARANIN and NYC HPD from December 1, 2014, GARANIN promptly appeals the decision to NYC HPD and provides the necessary documentation. **(Exhibit "M & N").**
40. Notably, GARANIN advises Deputy Director Taleporos that any and all supporting documentation that the accounts have been disclosed can be provided upon request (along with the evidence packages sent via mail and certified mail on December 18, 2014 and December 19, 2014).
41. Rather than ascertaining if there the accounts have been disclosed or even responding to GARANIN's emails and / or phone calls, Deputy Director TALEPOROS finally issues a letter the following month.
42. On January 20, 2015, nevertheless, and without any attempt to verify from GARANIN and without any prior notice or post deprivation hearing, GARANIN received a letter from NYC HPD and signed by Deputy Director TALEPOROS. The letter reiterates that:

> "it appears that you have still not provided the requested information regarding the accounts..." **("Exhibit O").**

43. On January 23, 2015, GARANIN speaks with Deputy Director TALEPOROS' immediate supervisor Director Victor Hernandez from NYC HPD and explains that although the necessary documentation was provided to NYC HPD no avenue was given to overturn Project Manager ZEISEL's arbitrary, capricious and retaliatory rejection.
44. Had Deputy Director TALEPOROS reviewed the documentation packages, he would have discovered that the accounts in question were disclosed on April 28, 2014 along with many other times during the onerous application process.
45. On January 23, 2015 and January 31, 2015, GARANIN sends same evidence packages directly to Director Hernandez at NYC HPD **("Exhibit P and Q").**
46. On March 17, 2015, GARANIN's appeal to HPD is upheld and it is deemed that all accounts have been disclosed **("Exhibit R").**
47. On March 18, 2015, Project Manager ZEISEL confirms receipt of the appeal. Shockingly, Project Manager ZEISEL once again asks for another onerous documentation package **("Exhibit S").**
48. Notably, the new documentation request provides 10 business days to provide the same documentation once again although knowing that the same documents have been viewed, re-viewed and re-viewed before for about 11 months.
49. Once again GARANIN complies with the documentation request by the requested timeframe.
50. On April 14, 2015, after again many delays and upon GARANIN's insistence that the process should be finalized after 1 year, Project Manager ZEISEL responds "None yet" to GARANIN's inquiries for an update **("Exhibit T").**
51. On April 15, 2015, GARANIN requests an update from Deputy Director TALEPOROS regarding the status of the application. **("Exhibit U").**
52. Deputy Director TALEPOROS has not responded as of the date of this filing.

53. On April 16, 2015, GARANIN received yet another Final Determination letter. The letter states that the application is denied due to "the combined annual gross income for all household members exceeds this maximum". **(Exhibit V").**
54. Shockingly after 1 year of being eligible for the apartment and meeting the income requirements, after following up on the status once more with Project Manager ZEISEL and Deputy Director TALEPOROS, it is deemed that the household no longer qualifies.
55. Notably, the Final Rejection Letter from Project Manager ZEISEL states that "as per the guidelines enforced by HPD, we must reject your application".
56. No opportunity to appeal is provided.
57. On April 16, 2015, GARANIN once again speaks with Deputy Director TALEPOROS' direct supervisor Director Hernandez at NYC HPD. Director Hernandez states that he will procure the computation of the annual gross income from Project Manager ZEISEL.
58. On April 20, 2015, GARANIN in a final attempt to understand Project Manager ZEISEL's arbitrary and capricious decisions, wrote two email that both Deputy Director TALEPOROS and Director Hernandez at NYC HPD. **("Exhibit W").**
59. GARANIN received no response to any of his inquiries as of the date of this filing.
60. Upon information and belief Project Manager ZEISEL's actions and Deputy Director TALEPOROS' and NYC HPD's lack of action were motivated by an attitude of discrimination and retaliation for Plaintiff's exercise of his First Amendment rights to petition the government as done de facto in the case of Project Manager ZEISEL and de facto and de jure in the case of Deputy Director TALEPOROS and NYC HPD.

**COUNT I**

**<u>42 U.S.C. § 1983, 1985 – Fourteenth Amendment to the United States Constitution</u>**

**<u>Equal Protection</u>**

**(Plaintiffs vs Defendants)**

61. The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.
62. The Defendants have engaged in the intentional, purposeful, unequal and discriminatory enforcement of NYC HPD's laws, policies and procedures against Plaintiff.
63. Defendants have administered the laws, policies and procedures of NYC HPD with an evil intent and an unequal hand, so as to illegally discriminate against the Plaintiff.
64. The enforcement of the NYC HPD's laws, policies and procedures is arbitrary, capricious and particularly directed against Plaintiff based on his expression of ideas and opinions, and enforcing his right to petition the government, in violation of his rights to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.
65. NYC HPD, through the aforesaid acts and knowledge of the named Defendants, has caused, directed, approved and ratified the aforesaid actions which constitute violations of Plaintiffs' constitutional rights.
66. The Defendants' aforesaid enforcement of the NYC HPD's laws, policies and procedures violates the equal protection clause of the Fourteenth Amendment.

67. As a consequence and result of the aforesaid acts of the Defendants, Plaintiff have suffered economic loss, severe mental anguish, emotional distress, impairment of their reputation and embarrassment, and was required, and continues to be required, to spend substantial sums of time in defending himself from the actions taken against them by the Defendants.
68. Plaintiff have no adequate or complete remedy at law to address the violations of his constitutional rights.

WHEREAS, Plaintiff respectfully request the following relief:

a) A declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;
b) A permanent injunction enjoining the Defendants, their agents and employees from:
    a. Enforcing NYC HPD's laws, policies and procedures in a discriminatory non-uniform way;
    b. Utilizing NYC HPD's laws, policies and procedures to harass and/or retaliate against Plaintiff;
    c. Subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City official and Project Manager of City administered Development
c) Compensatory and punitive damages;
d) Reasonable consultant fees and costs of suit; and
e) Such other and further relief as this Court may deem just and proper

**COUNT II**

**42 U.S.C. § 1983 – First Amendment to the United States Constitution**

**(Plaintiffs vs Defendants)**

69. The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more set forth herein.
70. The Defendants acted arbitrarily and in bad faith, in retaliation for Plaintiff's exercise of his First Amendment Right to free speech and to petition the government when:
    a. Project Manager ZEISEL who in her capacity as Development Associate is responsible in furthering NYC HPD's laws, policies and procedures in accordance with leasing of the apartments at 530 West 45th Street, improperly initially rejected GARANIN without any just cause;
    b. NYC HPD failed to initially properly investigate Project Manager ZEISEL's arbitrary and capricious decision;
    c. Project Manager ZEISEL continued to request arbitrary packages even after an appeal was upheld by NYC HPD overturning initial wrongful rejection are retaliatory and meant to prolong the process indefinitely
    d. NYC HPD does not provide adequate oversight to an agent who is meant to further NYC

HPD's laws, policies and procedures thus not allowing plaintiff to see process to completion and avoid arbitrary and capricious decisions

71. The Defendants' retaliatory actions violate the Plaintiffs' First Amendment rights to free speech and to petition the government.
72. As a consequence and result of the aforesaid acts of the Defendants, Plaintiff has suffered economic loss, severe mental anguish, emotional distress, impairment of his reputation and embarrassment, and was required, and continues to be required, to spend substantial sums of time in defending himself from the actions taken against him by the Defendants.

WHEREAS, Plaintiff respectfully request the following relief:

a) The improper denial be reversed in accordance with NYC HPD's procedural obligations to do so
b) A declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;
c) A permanent injunction enjoining the Defendants, their agents and employees from:
    a. Enforcing the NYC HPD's laws, policies and procedures in a discriminatory non-uniform way;
    b. Utilizing NYC HPD's laws, policies and procedures to harass and/or retaliate against Plaintiff;
    c. Subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City official and Project Manager of City administered Development
d) Compensatory and punitive damages;
e) Reasonable consultant fees and costs of suit; and
f) Such other and further relief as this Court may deem just and proper

**COUNT III**

**42 U.S.C. § 1983**

**(Plaintiffs vs New York City Housing Preservation and Development)**

73. The foregoing paragraphs of this Complaint are hereby incorporated by reference as of more fully set forth herein.
74. NYC HPD through the aforesaid acts and knowledge of the individual Defendants, has caused, directed, approved and/or ratified the aforesaid actions which constitute violations of Plaintiff's constitutional rights
75. NYC HPD's policies, practices and customs as implemented by and/or acquiesced in by its municipal decision-makers and/or policymakers caused the above constitutional violations,
76. NYC HPD's failure to adequately train and supervise its employees at the Marketing Department and properly oversee its development programs has caused the above constitutional violations and amounts to a deliberate indifference to and callous disregard of the rights of the Plaintiffs

77. As a result of the foregoing, Plaintiff has suffered the injuries and damages set forth herein.
78. The Acts of the Defendants were willful, wanton, malicious, and oppressive, were motivated solely by the desire to harm Plaintiff and by hatred of and ill will towards Plaintiff, and were performed in a malicious and wanton disregard for Plaintiff's Constitutional Rights.
79. As a consequence and result of the aforesaid acts of the Defendants, Plaintiff has suffered economic loss, severe mental anguish, emotional distress, impairment of his reputation and embarrassment, and was required, and continues to be required, to spend substantial sums of time in defending himself from the actions taken against him by Defendants.

WHEREAS, Plaintiff respectfully request the following relief:

a) A declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;
b) A permanent injunction enjoining the Defendants, their agents and employees from:
    a. Enforcing the NYC HPD's laws, policies and procedures in a discriminatory non-uniform way;
    b. Utilizing the NYC HPD's laws, policies and procedures to harass and/or retaliate against Plaintiff;
    c. Subjecting Plaintiffs to harassment and/or retaliation, or conspiring with others to do so, in their capacity as City official and Project Manager of City administered Development
c) Compensatory and punitive damages;
d) Reasonable consultant fees and costs of suit; and
e) Such other and further relief as this Court may deem just and proper

Jury Trial Demanded

RESPECTFULLY SUBMITTED:

BY: VSEVOLOD GARANIN

Pro Se [signature]

224 Richmond Terrace

Apartment 4C

Staten Island, NY 10301

(917) 434-1765 – Telephone

(347) 331-0941 – Facsimile

Sevagar2@gmail.com - Email

**Steve Garanin**

Exhibit A

**To:** Steve Garanin
**Subject:** RE: Eligibility- 2BR $3020/month

**From:** "Steve Garanin" <sevagar2@gmail.com>
**Date:** July 24, 2014 at 9:29:04 AM EDT
**To:** "'Alexandra Lein'" <alexandra@gothamwestnyc.com>
**Subject: RE: Eligibility- 2BR $3020/month**

Great! Can't wait to move in (pending final approval of course)..

Alexandra – also can you please forward another application – my cousin wants to apply with her daughter for a 2 person household for 1 bedroom – she meets the income requirements.

**From:** Alexandra Lein [mailto:alexandra@gothamwestnyc.com]
**Sent:** Thursday, July 24, 2014 9:27 AM
**To:** 'Steve Garanin'
**Subject:** RE: Eligibility- 2BR $3020/month

Perfect. 7P is officially off the market.

**From:** Steve Garanin [mailto:sevagar2@gmail.com]
**Sent:** Wednesday, July 23, 2014 8:14 PM
**To:** Alexandra Lein
**Subject:** RE: Eligibility- 2BR $3020/month

Alexandra,

Please find final credit authorization form from Benjamin Golub attached.

Also attached are photo ID's for Otar Datiashvili and Benjamin Golub.

I think you have everything needed now. Please proceed with final verification.

**From:** Alexandra Lein [mailto:alexandra@gothamwestnyc.com]
**Sent:** Wednesday, July 23, 2014 9:26 AM
**To:** 'Steve Garanin'
**Subject:** RE: Eligibility- 2BR $3020/month

Great! As soon as I receive Ben's credit authorization and Photo ID, 530 West 45th Street 7P will be off the market. Please send me your Photo ID and Otar's ID whenever you have a chance.

Thanks,

Alexandra

**From:** Steve Garanin [mailto:sevagar2@gmail.com]
**Sent:** Tuesday, July 22, 2014 9:37 PM
**To:** Alexandra Lein
**Subject:** RE: Eligibility- 2BR $3020/month

Alexandra,

Thank you so much for showing us the apartments today and for facilitating this process.

After discussing with Otar and my little cousin Ben via Skype from Spain, we have decided to proceed with **Apartment 7P** (the first non-model apartment you showed us).

Please find attached credit authorization forms for me and Otar – Ben will send his tomorrow when he finds a scanner.

**From:** Alexandra Lein [mailto:alexandra@gothamwestnyc.com]
**Sent:** Tuesday, July 15, 2014 9:58 AM
**To:** Steve Garanin (sevagar2@gmail.com)
**Subject:** Eligibility- 2BR $3020/month

Hi Steve,

Hope all is well. I was able to hear back from compliance in regard to your eligibility. Based on a preliminary review of your documents, your household is eligible for a 2 bedroom apartment at a monthly rent of $3020.

Please let me know if this is something you are interested in.

Best,

Alexandra

**Alexandra Lein**
Leasing Agent
530 W. 45th Street
New York, NY 10036
T. 212.247.2682
F. 212.504.3299
E. alexandra@530west45.com