UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 3 0 2016

Vsevolod Garanin,

      Plaintiff,

–v–

New York City Housing Preservation & Development, *et al.*,

      Defendants.

15-cv-3169 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

  Plaintiff Vsevolod Garanin brings this *pro se* action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated when his application to rent a middle-income housing unit in Manhattan was denied. Defendants are Chanel Zeisel ("Zeisel"), an employee at the private company that denied his application; the New York City Department of Housing Preservation and Development ("HPD"); and Doron Taleporos ("Taleporos") an HPD employee tasked with reviewing the denial of Garanin's application. HPD and Taleporos (the "City Defendants") and Zeisel have each filed a motion to dismiss. For the reasons that follow, both motions to dismiss are granted.

I.  **Background**

  The following factual allegations are taken from the Amended Complaint. Vsevolod Garanin ("Garanin") is a resident of Staten Island who seeks to rent an apartment located at 530 West 45th Street in Manhattan (the "Building"). Am. Compl. ¶¶ 1, 12. Defendant Zeisel is the project manager and leasing supervisor for 44th Street Development LLC (the "leasing company"), the company responsible for leasing units in the Building. *Id.* ¶ 2. The other

1

defendants in this action are HPD, a New York City agency that monitors the process of leasing low and middle income apartment units in the Building, and Taleporos, a HPD employee whose responsibilities include reviewing determinations of whether prospective tenants are eligible for affordable housing. *Id.* ¶¶ 3–4.

Garanin applied to rent a two-bedroom apartment in the Building designated for middle-income households in Manhattan on April 28, 2014. *Id.* ¶ 12. In July 2014, the leasing company informed Garanin that a preliminary review of his file showed his household to be income-eligible to rent one of their apartments, and the unit he requested was taken off the market. *Id.* ¶ 13 & Ex. A. The final review of Garanin's file proved lengthy, however, and the leasing company repeatedly requested and received additional documentation from Garanin. *Id.* ¶¶ 14–31. Garanin initially corresponded with a junior leasing agent, but on September 24, 2014, he asked to be put in touch with a manager. *Id.* ¶ 15. From that point forward, the bulk of his communications were with Zeisel. *Id.* ¶¶ 14–31. After months of back-and-forth between Garanin and Zeisel, Garanin contacted Zeisel's supervisor on December 1, 2014, to complain about the delay. *Id.* ¶ 28. On December 8, 2014, Garanin received a notice that his application had been denied as ineligible. *Id.* ¶ 32. The reason given for the denial was "failure to disclose asset accounts." *Id.* ¶ 35.

The notice of denial indicated that Garanin could appeal the leasing company's determination to HPD, and he did so around December 18, 2014. *Id.* ¶ 40. On January 20, 2015, Garanin received a letter from HPD signed by Taleporos denying his appeal. *Id.* ¶ 44. The letter stated that the reason for denying his appeal was that he had failed to disclose required information regarding three specified financial accounts. *Id.* Ex. O. Garanin alleges that he provided the requisite information regarding those accounts at several points in the process. *Id.*

2

¶ 46. Garanin contacted Taleporos's supervisor at HPD on January 23, 2015, to complain about the denial of his appeal, and provided new copies of the account disclosures. *Id.* ¶¶ 45–47. On March 17, 2015, Garanin received a letter from Taleporos stating that after review of the supporting documentation, HPD had reversed course and now recommended that Garanin's application be reconsidered by the leasing company. *Id.* ¶ 52 & Ex. S.

The leasing company reconsidered Garanin's application, but on April 16, 2015, Garanin received another letter stating that he was ineligible for middle-income housing, this time on the grounds that the combined annual gross income of his household members exceeded the maximum permissible amount. *Id.* ¶ 60 & Ex. W. Garanin did not appeal this determination to HPD, and he alleges that no opportunity to appeal was provided. *Id.* ¶ 63.

Garanin filed suit against Zeisel and the City Defendants on April 22, 2015. The City Defendants moved to dismiss the Amended Complaint on July 20, 2015. Zeisel separately moved to dismiss on August 7, 2015.

## II.   Legal Standard

When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The complaint will survive the motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Although this standard does not require "detailed factual allegations," it "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition to the text of the complaint, the Court may consider documents attached as exhibits,

incorporated by reference, or that are "integral" to the complaint. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

Where, as here, a plaintiff proceeds *pro se*, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Accordingly, "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008).

### III.   Analysis

Garanin brings suit under 42 U.S.C. § 1983, arguing that the denial of his application for middle-income housing violated his constitutional rights. First, he brings an Equal Protection claim against all Defendants, arguing that the denial represented unfair discrimination against him. Second, Garanin claims that Zeisel wrongly declared him ineligible for middle-income housing in retaliation for his complaints to her supervisor, and that this violated his rights under the First Amendment. Third, Garanin brings a First Amendment retaliation claim against the City Defendants, claiming that they are responsible for Zeisel's alleged malfeasance under a variety of theories. For the reasons explained below, all of Garanin's claims must be dismissed.

#### A. Garanin Fails to Plausibly Allege an Equal Protection Claim

Garanin's first claim is that his application to rent a middle-income apartment in the Building was denied as a result of "discriminatory enforcement of [HPD's] laws, policies, and procedures" by all Defendants. Am. Compl. ¶ 70. Garanin alleges that Defendants violated the Equal Protection Clause by discriminating against him as a "class of one." Pl.'s Opp. to City

4

Defs. at 7. In a "class of one" claim, "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). To establish a "class of one" claim, a plaintiff must show that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston*, 610 F.3d at 60 (quoting *Clubside*, 468 F.3d at 159).

In order to survive a motion to dismiss, a complaint pleading a "class of one" equal protection claim must "allege specific examples" of similarly situated individuals who have been treated differently. *Id.* at 59. The Amended Complaint includes no specific examples of individuals similarly situated to Garanin who were found eligible for middle income housing. It therefore fails to plausible allege a "class of one" equal protection violation, and Garanin's equal protection claim must be dismissed in its entirety.

### B. First Amendment Retaliation Claim Against Zeisel

Garanin's remaining claims are brought under the First Amendment, and turn on factual allegations and legal issues specific to each Defendant. The Court first addresses Garanin's claim against Zeisel, the employee of the leasing company tasked with reviewing his application. Garanin alleges that Zeisel found him ineligible for middle income housing in retaliation for his

5

complaint to her supervisor, and that this violated the First Amendment. Garanin's First Amendment claim against Zeisel fails because he has not adequately pled that her alleged retaliation constituted state action, a requirement under Section 1983.

### 1. The State Action Requirement

In order to state a claim for a violation of a constitutional right under Section 1983, a plaintiff is "required to show state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). The Second Circuit recognizes three theories under which acts performed by a nominally private entity are attributable to the state under Section 1983:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam) (alterations in original) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). The purpose of these tests "is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

Garanin is pursuing only a "close nexus" theory of state action. Garanin Opp. to Zeisel at 8. In order to demonstrate that a private entity took state action under a close nexus theory, "a causal link between the harm and the state action is required: it is not enough for a plaintiff to plead state involvement in *some activity* of the institution alleged to have inflicted injury upon a plaintiff; rather, the plaintiff must allege that the state was involved with the *activity that caused the injury* giving rise to the action." *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d

6

Cir. 2010) (brackets, ellipses, and internal quotation marks omitted). This "inquiry is necessarily fact-specific." *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013).

Outside of exceptional circumstances exhibiting "pervasive entwinement to the point of largely overlapping identity" between the private entity and the state, *Brentwood*, 531 U.S. at 303, state involvement with a private entity is not sufficient to provide the requisite causal link. Thus, a "finding of state action may not be premised solely on the private entity's creation, funding, licensing, or regulation by the government. Nor is a private entity a state actor where its conduct is not compelled by the state but is merely permitted by state law." *Cranley v. Nat'l Life Ins. Co. of Vermont*, 318 F.3d 105, 112 (2d Cir. 2003) (citation omitted). Similarly, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Id.* What a plaintiff must show to demonstrate that a private decision was state action under this test is that the government "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *United States v. Stein*, 541 F.3d 130, 147 (2d Cir. 2008) (quoting *Blum*, 457 U.S. at 1004).

### 2. Garanin Fails to Plausibly Allege State Action

Garanin's state action allegation is that in evaluating his eligibility for middle-income housing, Zeisel was acting as "an agent on behalf of [HPD]." Am. Compl. ¶ 2. According to the amended complaint, the Building "was partially financed by New York City municipal bonds in a private-public partnership arranged by the Gotham Organization and [HPD] in order to facilitate the development of the [Building]." *Id.* In exchange for state funds, the private entity administering the Building agreed to "provide middle and low income units to New York City residents who meet specific criteria as stipulated by [HPD]." *Id.* Garanin alleges that Zeisel was

7

tasked with "enforc[ing] the aforementioned criteria and guidelines on behalf of [HPD]," *id.*, and that her decisions in this role constitute state action.

If Garanin were challenging the leasing company's policy of rejecting applicants who fail to meet HPD's income requirements, or challenging a good-faith decision to reject him in accordance with those requirements, the facts above might be sufficient to allege state action. The Second Circuit has held that a HPD contractor taking action "effectively required" by HPD's regulations and contractual provisions satisfied the close nexus theory of state action. *Chan v. City of New York*, 1 F.3d 96, 107 (2d Cir. 1993) (contractor's failure to pay minimum wage was state action because it was "effectively required" by municipal contracting rules). Furthermore, private housing providers have been found to be engaged in state action when they implement the contractual and regulatory requirements of housing assistance programs. *See Claugus v. Roosevelt Island Hous. Mgmt.*, No. 96-cv-8155, 1999 WL 258275, *4 n.10 (S.D.N.Y. Apr. 29, 1999); *Lattimore v. Nw. Co-op Homes Ass'n*, Civ. A. No. 90-0049, 1992 WL 118383, at *7 (D.D.C. May 19, 1992); *Gallman v. Pierce*, 639 F. Supp. 472, 481–82 (N.D. Cal. 1986). However, even if the facts pled in the amended complaint could plausibly allege that a good-faith eligibility denial would be state action (and the Court need not and does not decide that), this does not mean they can support a claim for First Amendment retaliation.

The failure of Garanin's state action allegation is that he does not claim that Zeisel followed HPD's rules in rejecting him, but that she flouted them. The premise of Garanin's claim is that he *does* meet HPD's income threshold, but that Zeisel rejected him anyway out of spite and in defiance of HPD's guidelines. *See* Am. Compl. ¶ 78. Garanin does not claim that he was injured by HPD's policy, or even by Zeisel's behavior in the course of a good-faith attempt to follow HPD's policy. Nor has Garanin plausibly alleged that HPD so regulates the leasing

8

company's tenant selection decisions that whatever decision it reaches should be treated as state action. *Cf. Catanzano ex rel. Catanzano v. Dowling*, 60 F.3d 113, 119 (2d Cir. 1995) (Medicaid benefit decisions of private health care agencies are state action because they "are not simply regulated by the State; rather, they are deeply integrated into the regulatory scheme"). Accordingly, the Court cannot say that Garanin has plausibly alleged that "the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum*, 457 U.S. at 1004. *Chan* is not applicable to a situation where the plaintiff alleges that government rules were not followed. *See Jorgensen v. City of Clarksburg*, 89 F.3d 828 (4th Cir. 1996) (per curiam) (unpublished) (no state action where city required contractor to pay minimum wage but contractor did not comply). And insofar as HPD *did* participate directly in the processing of Garanin's application, it intervened in his favor by requesting that the leasing company reconsider its decision. Am. Compl. ¶ 52 & Ex. S. The Court has found no case in which a private provider of affordable housing was found liable under Section 1983 for a retaliatory failure to comply with government obligations. *See Echemendia v. Gene B. Glick Mgmt.*, 199 F. App'x 544, 548 (7th Cir. 2006) (landlord's failure to follow HUD procedures in retaliation for tenant's lawsuit was not state action).

Moreover, this is not a case where a private actor has been deputized by the government and given authority and discretion to exercise government power. The state action doctrine encompasses "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988). However, state actor liability for misuse of power is only possible for a private entity if it has been given a grant of authority to act on behalf of the state, like a private citizen deputized to participate in a law enforcement operation. *See*

9

*Mentavlos v. Anderson*, 249 F.3d 301, 321–22 (4th Cir. 2001). The question the Court has focused on above, whether the state has "encouraged or coerced" private entities to act, is separate from and orthogonal to the question of whether there has been a grant of state authority to a private actor. *See id.* at 322. If the state has encouraged or coerced private action, there can be a finding of state action despite the absence of any grant of state authority, or a grant too narrow to support misuse liability with respect to the challenged conduct. *Cf. id.* at 322–23 (harassment of female student by older male students at public school was not state action where disciplinary authority given to older students by school was too narrow to encompass harassment, and school had not coerced or encouraged it).

But in the circumstances of the present case as pled by Garanin, Zeisel has been granted no authority by the state. The leasing company is a private entity doing business with HPD. Pursuant to contract and regulation, HPD has imposed an income requirement that restricts what would otherwise be a pure business decision about what tenants to accept. But even if private enforcement of the income requirement could be deemed state action because a state entity has coerced or encouraged it, the requirement is not a grant of authority. In fact, it is a debility—a limitation on the leasing company's normal freedom to accept or reject applications as it pleases. All Garanin alleges is that HPD laid down criteria that Zeisel was required to apply, and that Zeisel, "arbitrarily and in bad faith," failed to correctly follow them. Am. Compl. ¶ 78. That is not sufficient to plead state action, and Garanin's claim against Zeisel must be dismissed.

### C. First Amendment Retaliation Claim Against the City Defendants

The Court now turns to Garanin's First Amendment retaliation claim against the City Defendants, HPD and its employee Doron Taleporos. Garanin argues that the City Defendants are liable under Section 1983 for Zeisel's alleged retaliatory denial of his rental application, and

10

he offers several theories for why this should be so. Garanin alleges that Taleporos, the HUD employee who processed his appeal, was grossly negligent in reviewing Zeisel's decision, or alternatively, that Taleporos conspired with Zeisel against Garanin. Garanin also alleges that the City Defendants caused his injuries through their failure to adequately supervise the leasing process and to adequately train personnel.

Garanin brings suit against Taleporos in both his personal and official capacity. Insofar as Garanin sues Taleporos in his official capacity, this is simply a suit against the City of New York ("the City"), and the Court will treat it as such. *See Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."). However, Garanin's claim against HPD must be dismissed at the outset. Under New York law, HPD is not a suable entity, and any claim against it must be brought in the name of the City of New York. *Simon v. Kidera*, No. 11-CV-6161, 2012 WL 34025, at *2 (E.D.N.Y. Jan. 4, 2012) (citing *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008)); *see* Fed. R. Civ. P. 17(b)(2).

Turning to Garanin's claim against Taleporos (in his personal capacity) and the City, the Amended Complaint fails to plausibly allege that either Defendant is liable for Zeisel's alleged retaliation. Pleading a First Amendment retaliation claim requires a plaintiff to show that "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). For the purposes of this section, the Court assumes that Garanin has plausibly alleged that he engaged in speech protected by the First Amendment. However, Garanin's retaliation claim against the City

11

Defendants fails because he has not plausibly alleged that Taleporos or the City took any adverse actions motivated by his speech or are otherwise responsible for his injury.

The Court first considers Taleporos's actions taken in his personal capacity. To plead a Section 1983 claim against Taleporos in his personal capacity, Garanin must plausibly allege Taleporos's "personal involvement" in the violation of his constitutional rights. *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Garanin fails to plausibly allege Taleporos's direct participation in a constitutional violation because he has not alleged any action (or inaction, for that matter) by Taleporos that injured him. Garanin was not injured by any purported negligence on behalf of Taleporos during the appeals process, because Taleporos ultimately granted Garanin's appeal. Am. Compl. ¶ 52. Nor does Garanin plausibly allege that he was injured under a policy created by Taleporos, or that Taleporos was otherwise responsible for Zeisel's actions outside of his role in the appeals process. *See Grullon*, 720 F.3d at 139 (describing theories of supervisory liability). Garanin also fails to allege any facts in support of his contention that Taleporos conspired with Zeisel to deny his eligibility. Am. Compl. ¶ 44. "Broad allegations of conspiracy are insufficient" to survive a motion to dismiss; instead the plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (en banc). In short, Garanin's claims against Taleporos in his personal capacity consist only of "labels and conclusions." *Twombly*, 550 U.S. at 555. These allegations are not plausible, and must be dismissed.

Garanin's claims against Taleporos in his official capacity (*i.e.*, against the City) fare no better. Garanin claims that the City is responsible for his injury because it failed to adequately supervise and train the individuals involved in making middle income housing eligibility

12

decisions. To state a claim for municipal liability under Section 1983, a plaintiff must point to "an official policy or custom" that caused the violation of his constitutional rights. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). "A failure to act, train, or supervise cannot constitute a municipal custom or policy unless the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Khapesi v. City of New York*, No. 13 CIV. 4391, 2014 WL 2605342, at *4 (S.D.N.Y. June 10, 2014) (internal quotation marks omitted); *see Connick v. Thompson*, 563 U.S. 51, 61–62 (2011); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (Sotomayor, J.)). "Deliberate indifference" is a high standard. *Connick*, 563 U.S. at 61. To meet it, a plaintiff must allege "that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Deliberate indifference describes only inaction that "was the result of conscious choice and not mere negligence." *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (internal quotation marks omitted).

Garanin has failed to plausibly allege any part of these requirements. He has not identified a policymaking official who should have taken action to train or supervise, nor has he provided any factual allegations that such an official failed to act despite awareness of a risk of constitutional injury. In fact, Garanin's only factual allegation supporting deliberate indifference is the alleged misconduct in his own case. However, "isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones*, 691 F.3d at 81. Garanin has failed to

13

plausibly allege deliberate indifference, and failed to state a claim for municipal liability. His First Amendment retaliation claim against the City Defendants is dismissed.

## IV.   Conclusion

For the reasons stated above, both motions to dismiss are granted. This resolves Dkt. Nos. 23, and 30. The Clerk of Court is instructed to close the case.

SO ORDERED.

Dated: March 30, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge